IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| EQUIPMENT ACQUISITION RESOURCES, INC., | ) ) ) | |
| | ) | Case No. 09 B 39937 |
| Debtor. | ) ) | |
| | ) | |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc., | ) ) ) ) | Hon. Timothy A. Barnes |
| | ) | |
| Plaintiff, | ) | Adv. No. 11 A 02200 |
| v. | ) ) | |
| AMERICAN BANK, FSB, | ) ) | |
| Defendant. | ) ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred of all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding to avoid and recover fraudulent conveyances arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H)

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

This matter comes before the court on the motion (the "Motion To Dismiss") of defendant, American Bank, FSB ("American" or "Defendant") to dismiss the amended adversary complaint (the "Complaint") filed by plaintiff, William Brandt, Jr. in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc. ("EAR", "Debtor" or "Plaintiff"). The Complaint, as described below, seeks the recovery of approximately $1.5 million in lease payments alleged to have been fraudulently transferred from EAR to Defendant as part of a fraudulent lease scheme orchestrated by one Sheldon Player ("Player"). Defendant seeks dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted or to plead fraud with the particularity required by Rule 9(b).

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Plaintiff's Complaint and are assumed to be true for purposes of the motion to dismiss, all reasonable inferences being drawn in Plaintiff's favor. *See, e.g., Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 903 (7th Cir. 2011).

EAR was incorporated in 1997. It was designed to operate as a refurbisher of special machinery, a manufacturer of high-end technology parts, and a process developer for the manufacture of high-technology parts. The bulk of EAR's stated revenue derived from refurbishing and selling high-tech machinery; it was set up to purchase high-tech equipment near the end of its useful life at prices that were low relative to the cost of new units, and then refurbish using a propriety process the equipment for sale to end-users at substantial gross margins.

Eventually, EAR's apparent success came to an end, because of Player's abuse of EAR. Player systematically and repeatedly caused EAR to enter into unnecessary and harmful agreements related to over-valued machinery. As part of his scheme, Player caused EAR to enter into financing and financing-type lease agreements with certain entities (the "Financial Entities") related to equipment that was allegedly owned by Machine Tools Direct, Inc. ("MTD"). However, MTD was a mere strawman in Player's scheme. Many, if not all, of the sale invoices from MTD to the Financial Entities grossly overstated the value of the underlying equipment. MTD "purchased" the equipment from EAR mere days before MTD sold the equipment to either EAR or the Financing Entity. In those instances, Player purportedly caused EAR to transfer title to the equipment to MTD, and MTD then sold that equipment to EAR (or the Financial Entity in the case of a lease) at an inflated purchase price. As a result of this scheme, Player caused EAR to lease equipment at a cost far in excess of its actual value.

EAR did not benefit from these circular transfers, as EAR paid far more for the equipment under the financing or lease agreements than it ever received via the sale to MTD. Moreover, Player's defalcations further prevented EAR from having the funds necessary to repay the related financing or lease obligations, thus requiring EAR to enter into an increasing number of these transactions in order to have sufficient funds to repay its current obligations.

Plaintiff contends that "[i]n effect, Player's misconduct amounted to a Ponzi-scheme where funds from later Financing Entities were used to repay EAR's obligations under earlier financing and lease obligations." Complaint, at ¶ 15.

In 2009, after receiving numerous notices of default from its creditors, EAR sought the assistance of outside counsel and turn-around specialists in order to assist in the company's rehabilitation. After some investigation, EAR's outside counsel and consultants discovered what they believed to be evidence of potential fraud in EAR's leasing activity.

Upon this discovery, EAR's officers and directors resigned on October 8, 2009. With the resignation of the former officers and directors, Player too lost any power to influence or control EAR's operations. Plaintiff was then elected as sole member of the board of directors and as the Chief Restructuring Officer, vested with power to assume full control of EAR's operations and all the powers and duties of the President, Chief Executive, and Treasurer of EAR. Pursuant to these powers, Plaintiff filed, on October 23, 2009 (the "Petition Date"), EAR's voluntary chapter 11 petition.

On July 15, 2010, the court confirmed EAR's Second Amended Plan of Liquidation (the "Plan"), and William Brandt, Jr. was appointed as the Plan Administrator (the "Plan Administrator"), with the authority to pursue "Litigation Claims," as defined in the Plan. Plaintiff seeks to bring the claims alleged in the Complaint pursuant to that authority.

PLAINTIFF'S TRANSACTIONS WITH DEFENDANT

According to Plaintiff, pursuant to a master lease agreement and accompanying schedules, American entered into numerous leases with EAR related to certain equipment (the "Leases") between April 2005 and June 2009. Under the terms of the Leases, EAR was required to make monthly payments to American with respect to the equipment identified in the Leases.

Plaintiff alleges upon information and belief that Player caused EAR to enter into the Leases because doing so furthered his fraudulent scheme. The transactions with Defendant are the type of financing arrangements that Player used to perpetuate his scheme. As a result of the scheme, EAR creditors that had financing agreements and leases which were part of Player's scheme have been unable to identify what, if any, equipment that was previously located at EAR's facilities was subject to a valid security agreement or lease. Plaintiff contends that because the transfers made to American were part of Player's fraudulent scheme, the transfers that EAR made to Defendant in satisfaction of the obligations under the Leases were made with the actual intent to hinder, delay, and defraud EAR's remaining creditors.

Within two years preceding the filing of the chapter 11 petition, and specifically from November 2007 through June 2009, EAR made transfers to Defendant in accordance with the requirements of the Leases totaling $1,204,403.27. Plaintiff seeks the avoidance of those transfers under 11 U.S.C. § 548(a)(1)(A) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550. Within four years preceding the bankruptcy filing, and specifically from September 2006 through September 2007, EAR made additional transfers to American in accordance with the

requirements of the Leases totaling $316,675.90. Plaintiff seeks the avoidance of all the foregoing transfers, totaling $1,521,079.17, under 11 U.S.C. §544(b)(1) and 740 ILCS 160/5(a)(1) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550.

## DISCUSSION

1. The Section 548(c) Defense for Transfers Made for Value and in Good Faith

Defendant asserts that the Complaint must be dismissed under Rule 12(b)(6) because the Defendant received the lease payments from Debtor in good faith and for value. Section 548(c) of the Bankruptcy Code provides the recipient of a transfer otherwise voidable under section 548 with an affirmative defense, to the extent that the transferee took the transfer for value and in good faith.[1] A similar defense to state law fraudulent transfer claims is contained in section 9(a) of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/9(a) (West 2012).[2]

Inasmuch as the defense provided by section 548(c) constitutes an affirmative defense, and not an element of the Plaintiff's claim, it is unnecessary for Plaintiff to preemptively plead facts negating Defendant's good faith. *See, e.g., Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("plaintiffs need not anticipate and attempt to plead around all potential defenses"); *In re Bayou Group, LLC*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007) ("It is not incumbent on the plaintiffs to plead lack of good faith on defendants' part because lack of good faith is not an element of a plaintiff's claim under Section 548(a)(1)").

Defendant acknowledges these principles but contends that the section 548(c) defense is established on the face of the Complaint in this case. It is true that when, in its complaint, "the plaintiff pleads itself out of court-that is, admits all the ingredients of an impenetrable defense," the plaintiff's claim may be dismissed under Rule 12(b)(6). *Xechem*, 372 F.3d at 901.

Here, the value component of the defense is clearly established on the face of the Complaint by virtue of the allegations that the transfers were made in satisfaction of an antecedent debt owed to Defendant. However, Defendant points to nothing in the Complaint that establishes its good faith. Defendant merely contends that the Complaint fails to allege that Defendant was a participant in the fraud or otherwise acted in bad faith. Again, Plaintiff is not required to preemptively plead facts negating the good faith defense.

Moreover, good faith in this context has been held to have an objective component; if the circumstances would place a reasonable person on inquiry as to the fraudulent scheme (and such

---

[1] Section 548(c) provides in pertinent part that "a transferee ... of ... a transfer [voidable under § 548] ... that takes for value and in good faith has a lien on or may retain any interest transferred ... to the extent that such transferee ... gave value to the debtor in exchange for such transfer ..."

[2] Section 9(a) provides: "A transfer or obligation is not voidable under paragraph (1) of subsection (a) of Section 5 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Section 5(a)(1) relates to transfers made with actual fraudulent intent.

inquiry would have revealed it), the good faith defense will be unavailable. *See Lake States Commodities*, 253 B.R. at 878. Subjective knowledge is not dispositive, and Defendant must show that the circumstances surrounding the transfers at issue would not have placed a reasonable person on inquiry notice of the alleged fraud. That showing is not made on the face of the Complaint in this case.

Accordingly, as the section 548(c) defense is not established on the face of the Complaint, dismissal on that basis is not warranted.

2. <u>Failure To Identify a "Triggering Creditor" for Purposes of Section 544(b) of the Bankruptcy Code</u>

Under section 544(b), the trustee may avoid transfers of the debtor's property that are voidable under state law by creditors holding unsecured claims. This provision allows the trustee to step into the shoes of an unsecured creditor - - often referred to as a "triggering creditor" - - for purposes of bringing a state law fraudulent transfer claim, such as the claim asserted by Plaintiff in Count II. Defendant contends that Count II must be dismissed under Rule 12(b)(6) because Plaintiff failed to identify a triggering creditor in his Complaint.

In *In re Leonard*, 125 F.3d 543 (7th Cir. 1997), the Seventh Circuit explained that a trustee need not identify the specific creditor whose rights he seeks to assert:

> Section 544(b) ... gives the Trustee the power to 'avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by [an unsecured creditor]'. ... In other words, if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate. ... [Appellants] complain that the Trustee has not articulated the specific creditor who could set aside [the alleged fraudulent transfer], but a trustee need not do so. Thirteen unsecured claims have been filed; the Trustee can assume the position of any one of them.

*Id.* at 544-45; *see also In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998) ("The trustee need not identify the creditor, so long as the unsecured creditor exists").

Moreover, it is unnecessary for Plaintiff to identify a creditor whose claim existed at the time of the allegedly fraudulent transfer. While there have been decisions espousing such a requirement, *see, e.g., In re Aluminum Mills Corp.*, 132 B.R. 869, 889 (Bankr. N.D. Ill. 1991); *In re Heartland Chemicals, Inc.*, 103 B.R. 1012, 1016 (Bankr. C.D. Ill. 1989), they were decided prior to enactment of (or were not governed by) section 160/5 of the Illinois Uniform Fraudulent Transfer Act. That section specifically provides for the avoidance of transfers that are fraudulent as to a creditor, "whether the creditor's claim arose before or after the transfer was made ... ."

The court takes judicial notice of the scores of unsecured claims filed in the record of this case and concludes that such a triggering creditor does in fact exist.[3] Accordingly, the court finds that Plaintiff's failure to identify a triggering creditor does not warrant dismissal of Count II under Rule 12(b)(6).

3. <u>Failure To State a Plausible Claim or To Plead Fraud with Particularity</u>

Defendant also seeks to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to plead a plausible claim or to plead fraud with the particularity required by Rule 9(b).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As noted by the Seventh Circuit in *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007), the Supreme Court "has interpreted that language to impose two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests.' ... Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.* at 776 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 569 n.14 (2007)). While the complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 550 U.S. at 555-56. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic*).

Where fraud is alleged, a more rigorous pleading standard comes into play. Rule 9(b) provides, *inter alia*, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this standard, a plaintiff must state the "who, what, when, and where" of the alleged fraud. *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Again, the Complaint in this case alleges actual intent fraudulent transfers, which require proof that the transfers were made by Debtor "with actual intent to hinder, delay, or defraud" creditors. *See* 11 U.S.C. § 548(a)(1)(A); 740 ILCS 160/5(a)(1). The only element at issue here is the actual intent of EAR at the time the transfers were made.

Actual intent to defraud may be proved by circumstantial evidence, often referred to as badges of fraud. The commonly recognized badges of fraud include: "(1) whether the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) whether the debtor retained control of the asset; (3) whether the transfer was to a family member; (4) whether the transfer was prior to debtor incurring a substantial debt; (5) whether the transfer was

---

[3]   A court may take judicial notice of matters of public record, including public court documents, without converting a motion under Rule 12(b)(6) into a summary judgment motion. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

substantially all of debtor's assets; (6) whether the debtor received consideration for the transfer; (7) whether the transfer was disclosed or concealed; (8) whether the debtor made the transfer before or after being threatened with suit by creditors; and (9) whether the debtor absconded." *Grede v. Bank of New York Mellon*, 441 B.R. 864, 881 (N.D. Ill. 2010) (citations omitted). A single badge of fraud is insufficient to establish intent, but the presence of several may create a presumption that the debtor acted with the requisite intent to defraud. *Id.*

Here, the Plan Administrator does not allege badges of fraud. Instead, he alleges that Sheldon Player's misconduct amounted to a *Ponzi* or "*Ponzi*-like" scheme where funds from later leasing or financing entities were used to repay EAR's obligations to earlier equipment lessors and financiers.[4] In essence, the Plan Administrator relies on the "*Ponzi* scheme presumption" to establish that the transfers to the Defendant were made with actual intent to defraud EAR's other creditors.

Proof of a *Ponzi* scheme has been held sufficient to establish actual intent to hinder, delay, or defraud creditors so as to permit avoidance of a transfer as fraudulent. *Id.* (citing *Plotkin v. Pomona Valley Imps., Inc. (In re Cohen)*, 199 B.R. 709, 717 (9th Cir. BAP 1996)). The classic *Ponzi* scheme involves an enterprise which makes payments to investors from money received from more recent investors, rather than from profits of a legitimate business enterprise. *Lake States Commodities*, 253 B.R. at 869 n.2. Proof of a *Ponzi* scheme ordinarily involves evidence that: deposits were made by investors; the *Ponzi* scheme operator conducted little or no legitimate business operations as represented to investors; the purported business operation produces little or no profits or earnings, the source of the funds being new investments by subsequent investors; and the source of payments to investors is cash infused by new investors. *See In re Lake States Commodities, Inc.*, 272 B.R. 233, 242 (Bankr. N.D. Ill. 2002). The facts in this case do not fit the classic *Ponzi* scheme model; the Defendant is not an investor and the Complaint itself alleges that EAR was in the legitimate business of "refurbishing and selling high-tech machinery." Nonetheless, the Plan Administrator contends that EAR's leasing and financing transactions were a "*Ponzi*-like" scheme and, as such, establish EAR's actual fraudulent intent.

Courts have, in fact, recognized that "even if Debtor's business operations do not exactly match the description of a Ponzi Scheme," a trustee may "still continue to characterize the business model as a Ponzi Scheme," thereby meeting the intent prong of a fraudulent transfer claim. *In re Norvergence, Inc.*, 405 B.R. 709, 730 (Bankr. D.N.J. 2009). Here, however, the Plan Administrator has failed to allege sufficient facts to establish even a "*Ponzi*-like" or similar fraudulent scheme with the required particularity. The Complaint makes general and conclusory statements as to the alleged fraudulent scheme, but fails to give any details as to the scheme itself.

There are very few details concerning the "circular transfers" that are alleged to have prevented EAR from having the funds necessary to repay current obligations, thereby requiring EAR to enter into new transactions to repay its current obligations. There are no specific facts or

---

[4]  The original *Ponzi* scheme was the subject of a Supreme Court decision arising out of the bankruptcy of Charles Ponzi. *See Cunningham v. Brown*, 265 U.S. 1 (1924).

details to support the allegation that payments to earlier lenders were made from later lenders and not from EAR's other revenues or profits. There is not even an indication when the fraudulent leasing activity began, and only the barest outlines of a scheme are sketched.

Moreover, the key allegation of fraud with respect to the transfers at issue here is made on information and belief:

> "Upon information and belief, Player caused EAR to agree to enter into the Leases because doing so furthered his fraudulent scheme. The transactions with American are of the type of financing arrangements that Player used to perpetuate his wrongful scheme. As a result of the misconduct, EAR creditors that had financing and leases which were part of Player's scheme have been unable to identify what, if any, equipment that was previously located at EAR's facilities was subject to a valid security agreement or lease."

Complaint, at ¶ 20.

While fraud cannot generally be pleaded based on information and belief, such allegations are permitted when the specific facts are not available to the plaintiff and the plaintiff provides the grounds for his suspicions. *See, e.g., Pirelli Armstron Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Here, Plaintiff alleges that: EAR entered into unnecessary and harmful financing and lease agreements related to over-valued machinery, that it used a straw man to purchase or lease its own equipment and pocket a portion of the proceeds, and that because the resulting obligations exceeded the money EAR received from the transactions, EAR necessarily entered into an increasing number of these transactions in order to have sufficient funds to repay its current obligations. The allegation then relied on by Plaintiff to connect the subject transfers to this broadly sketched scheme is that the transactions with Defendant "are of the type of financing arrangements" that were used to perpetuate the scheme. Complaint, at ¶ 20.

These allegations are not only insufficient to come within the exception for pleading on "information and belief," they are insufficient in any event to connect the transfers at issue to the alleged scheme.[5] In order "[t]o prevail, the Trustee must plead the requisite intent with respect to each transfer sought to be avoided and must connect the allegations against the Defendants to the Debtors' scheme to defraud creditors." *In re Lancelot Investors Fund, LP*, 451 B.R. 833, 839 (Bankr. N.D. Ill. 2011). Plaintiff does list the dates and amounts of the transfers at issue. However, other than the bald allegation that the transactions with Defendant were "of the type" of financing arrangements that Player used to perpetuate the alleged scheme, Plaintiff fails to describe how the payments were used to further that scheme and harm EAR's other creditors, the so-called "later lenders."

---

[5] The court notes that while under Rule 9(b), states of mind may be alleged generally, the Supreme Court noted in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that "generally" as used in Rule 9(b) "is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* at 686-87.

Again, to survive a motion to dismiss, a complaint must be facially plausible. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the court cannot draw the reasonable inference that the payments to the Defendant were instrumental in an actual fraud by EAR.

## CONCLUSION

For all of the foregoing reasons, the Complaint will be dismissed in one month, on November 1, 2012, unless the Plan Administrator has amended the Complaint to provide the necessary specificity regarding the alleged fraudulent scheme and the transfers allegedly made in furtherance thereof.

A separate order will be issued, concurrent with this Memorandum Decision, (1) granting in part and denying in part Defendant's Motion To Dismiss, (2) providing Plaintiff leave to amend the Complaint no later than October 31, 2012, and (3) providing that the Complaint will be dismissed in its entirety on November 1, 2012 by separate order of the court if no amendment is properly and timely filed.

Dated: September 28, 2012

ENTER:

_____
Timothy A. Barnes
United States Bankruptcy Judge